# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOHN P. TOMKINS,          )
                               )
          Petitioner,       )
                               )     Case No. 16-cv-7073
         v.                 )
                               )     Judge Robert M. Dow, Jr.
UNITED STATES OF AMERICA,   )
                               )
          Respondent.     )
                               )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner John P. Tomkins's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 [1]. Also before the Court are Petitioner's motion regarding supplemental authorities [16], motion for release on bond [5], motion for a status report [17], motion for an expedited ruling [18], and motion for the Court to take judicial notice [28]. The Court considered the additional authorities identified in Petitioner's motion regarding supplemental authorities [16] and motion for the Court to take judicial notice [28], and thus the motions [16; 28] are granted.[1] For the reasons set forth below, the Court denies Petitioner's habeas corpus petition [1] and declines to issue a certificate of appealability. The Clerk is directed to enter judgment in favor of the United States. Petitioner's motion for release on bond [5], motion for a status report [17], and motion for an expedited ruling [18] are stricken as moot. Petitioner's motion [27] to strike the government's memorandum concerning *Teague v. Lane* is denied.

---

[1] On April 19, 2018, Petitioner also filed a notice of supplemental authority [29], which the Court reviewed and considered in ruling on Petitioner's § 2255 Petition.

## I.     Background

### A.     Criminal Trial

In 2009, a grand jury returned a thirteen-count superseding indictment charging Petitioner with mailing threatening communications in violation of 18 U.S.C. § 876(b) (Counts 1-10), unlawful possession of destructive devices in violation of 26 U.S.C § 5861(d) (Count 11-12), and using, carrying, and possessing a destructive device in in furtherance of a crime of violence under 18 U.S.C. § 924(c)(1)(A) and (c)(1)(B)(ii) (Count 13).

In 2005, Petitioner began sending threatening letter to targets, demanding that they purchase sufficient shares of certain stock he owned to drive up the price.   Petitioner threatened that something "very tragic" would happen to the targets' loved ones if Petitioner's demands were not met.   In 2007, Petitioner sent victims packages containing homemade devices that appeared to be pipe bombs with a letter that stated "BANG!! YOU'RE DEAD" and warned "[t]he only reason you are still alive is because I did not attach one wire * * * There is enough gunpowder and steel shot in that tube to kill anyone in a ten foot radius when it goes off."

Investigators identified Petitioner as a suspect using purchasing records for the stocks referred to in his letters.   Searches conducted on Petitioner's home and Petitioner's storage lockers revealed two additional pipe bombs, drafts of the threatening letters, bomb-making materials, information about the targets and their residences, and financial records related to the stocks mentioned in his threats.

As noted by the Seventh Circuit on direct appeal, the case was heavily litigated leading up to trial.   *United States v. Tomkins*, 782 F.3d 338, 348 (7th Cir. 2016).   One point of contention was Petitioner's effort to suppress evidence from the government's searches.   The warrants obtained in connection with the searches failed to impose a time limit for the financial records to

be seized. Accordingly, the Court concluded that the seizure of a filing cabinet containing documents relating to Petitioner's role as treasurer of his local union exceeded the scope of the warrant. Still, the Court concluded that even though the warrants were deficient in some respects, this did not mean that the warrants were impermissible general warrants. The warrants and the attachments to the warrants contained detailed categories of evidence and were supported by thorough affidavits. Furthermore, the good-faith exception permitted seizure of the items Petitioner sought to exclude.

Petitioner also requested to represent himself. The Court granted that request and allowed Petitioner to proceed *pro se*, with stand-by counsel. However, the Court denied Petitioner's request for hybrid counsel.

Petitioner's trial began on April 23, 2012. In its case-in-chief—which took up the first week and a half of Petitioner's trial—the government presented the testimony of nearly 40 witnesses, including employees of the investment firms that received Petitioner's mailings and government investigators involved in identifying Petitioner. The government also introduced extensive physical evidence, including the threatening letters, handwriting samples, the draft letters and devices recovered from Petitioner's property, and photographs of the devices at issue. Finally, the government introduced the expert testimony of Raymond Voorhees and John Winslow, who testified as explosives experts, and Officer McGuire of the Chicago Police Bomb Squad.

Mr. Voorhees testified that the devices had components of improvised explosive devices. However, he could not be certain whether the devices would have exploded if the loose wires were attached, because the devices had been rendered safe by blasting them with a water cannon before

Mr. Voorhees examined the devices. He further testified that—in his opinion—the Chicago device was not functional without the wire attached.

Mr. Winslow testified that the devices would have functioned if the unattached wire had made contact with the positive terminal of the battery. He further testified that the devices also could have ignited due to physical shock, friction, heat, static electricity, and even possibly as a result of being handled improperly during shipping.

Like Mr. Voorhees, Officer McGuire also testified that the Chicago device was not functional without the wire attached. During his testimony, Officer McGuire mentioned that he had taken an x-ray of the Chicago device before the pipe had been broken open. When the government displayed a copy of the x-ray on a monitor in front of Officer McGuire, Petitioner objected that it was the first time he had seen the x-ray. The government admitted that the x-ray was not in the materials provided to Petitioner. The Court prohibited the government from introducing the x-ray in its case-in-chief. However, the Court warned Petitioner that the x-ray might come in as rebuttal evidence.

Before resting its case, the government moved to bar Petitioner from testifying about his subjective intent in creating his devices. The Court concluded that Petitioner's subjective intent was irrelevant for determining whether the devices constituted "destructive devices" in Petitioner's case. In reaching this conclusion, the Court relied upon *United States v. David Johnson*, 152 F.3d 618 (7th Cir. 1998), which held that subjective intent is irrelevant for determining whether something constitutes a "destructive device" when there is no legitimate social or commercial purpose for the device.

In his case, Petitioner introduced the testimony of three character witness before testifying himself. During his testimony, Petitioner admitted to creating and sending the threatening letters

and packages containing explosive materials, but testified that the devices were not designed to explode. Specifically, Petitioner claimed that "certain design features" in each device "made them nondestructive devices." Petitioner also testified that the unattached wire was fully insulated so that it could not connect with the battery and that he tested each device with a voltmeter "to make sure that no electricity was flowing through them." The government moved to introduce the x-ray to rebut Petitioner's claim that he separated the igniter from the gunpowder. The Court allowed the government to introduce the x-ray as rebuttal evidence.

After a jury found Petitioner guilty on all but one count, Petitioner moved for a mistrial, raising (among other arguments) the argument that the Court erred by allowing the government to introduce the x-ray that it failed to disclose as required by Rule 16, and the argument that the Court improperly instructed the jury based on *David Johnson*. The Court denied Petitioner's motions for a new trial.

The Court sentenced Petitioner to 37 years in prison, which included 7 years on Counts 1 through 6 and 8 through 12 (to run concurrently) and a 30 year mandatory minimum for using a destructive device in relation to a crime of violence. At sentencing, the Court noted "if I had discretion to do so, I might have imposed a shorter sentence [on Counts 1 through 6 and 8 through 12] in view of the mandatory sentence." [*Tomkins*, No. 07-cr-00227, Dkt. 450, at 44.]

### B. Direct Appeal and 28 U.S.C. § 2255 Petition

On direct appeal, Petitioner argued that this Court erred by (1) barring Petitioner from arguing that the devices were meant as hoaxes, (2) admitting the x-ray that the government failed to turn over to defense before trial, and (3) refusing to suppress evidence from a search of his home and storage lockers.

With respect to Petitioner's argument that the devices were meant as hoaxes, Petitioner argued that he should have been allowed to introduce evidence regarding how he intended the devices to function. Petitioner argued evidence of his subjective intent was necessary to rebut testimony from the government's witnesses regarding how his devices were designed and intended to function. The Seventh Circuit concluded that this Court properly applied the holding of *United States v. David Johnson*, 152 F.3d 618 (7th Cir. 1998), which held that subjective intent is irrelevant for determining whether something constitutes a "destructive device" when there is no legitimate social or commercial purpose. Although the Seventh Circuit indicated that the jury instructions should not have asked the jury to determine whether Petitioner "intended" to create a bomb, the court concluded that this error was harmless because there was ample evidence to prove beyond a reasonable doubt that the devices were destructive devices.

With respect to Petitioner's argument that the district court erred in admitting the x-ray that the government failed to turn over before trial, Petitioner argued that the district court should have granted Petitioner a mistrial based on the government's failure to timely produce the x-ray in violation of Rule 16. The Seventh Circuit found that the district court's exclusion of the x-ray from the government's case-in-chief and clear warning that the x-ray may come in as rebuttal evidence was a reasonable remedy for the government's Rule 16 violation. The Seventh Circuit further concluded that any error would be harmless, given that the x-ray was duplicative of other evidence presented by the government. Specifically, "the government introduced photographic evidence showing that the relative sizes of the lead pellets and gunpowder would have made it highly unlikely that they did not mix together and contact the igniter. Further, explosive experts confirmed that [Petioner's] devices had all the elements of explosive bombs, and expert Winslow maintained that the devices could have exploded if mishandled during shipping." *United States v.*

*Tomkins*, 782 F.3d 338, 348 (7th Cir. 2016). The Seventh Circuit therefore was "not convinced that the x-ray made a critical difference in the jury's decision." *Id.*

Finally, with respect to Petitioner's argument regarding his motion to suppress, Petitioner argued that the warrants allowing for the seizure of materials from his home and storage lockers were not adequately constrained in time and scope. The Seventh Circuit disagreed, concluding that the warrants were reasonable. The Seventh Circuit further concluded that even if the warrants were deficient, this Court correctly ruled that a good-faith exception applied to preclude the application of the exclusionary rule. The Seventh Circuit therefore affirmed this Court's judgment in its entirety.

Petitioner—through counsel—then filed a petition for writ of certiorari, which the Supreme Court denied on November 2, 2015. On July 7, 2016, Petitioner filed a timely petition to vacate, set aside, or correct under 28 U.S.C. § 2255 [1], raising a number of arguments challenging his conviction and sentence. Before the Court is Petitioner's § 2255 petition [1], and other miscellaneous motions filed in his § 2255 proceeding.

## II.     Legal Standard

### A.        Habeas Standard

The Seventh Circuit has stressed that "relief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Under § 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255). Thus, a § 2255

motion is not a substitute for a direct criminal appeal. See *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) (stating that a § 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal").

**B.     Ineffective Assistance of Trial Counsel Standard**

In order to prevail on an ineffective assistance of counsel claim, Petitioner must show that his counsel's performance was deficient and that he was prejudiced by the deficiencies in counsel's performances. *Strickland v. Washington*, 466 U.S. 688, 687 (1984). Both components of the test must be satisfied or the claim will be denied; "the lack of either is fatal." *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996).

Under the first prong of the *Strickland* test, Petitioner must establish that "counsel's representation fell below an objective standard of reasonableness" when measured against "prevailing professional norms." *Id.* at 688; see also *Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016). In evaluating counsel's performance, a court must consider "all of the circumstances of [the] case" in determining whether counsel's acts or omissions "were made outside the wide range of professionally competent assistance." *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000) (citing *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995)). However, review of counsel's performance is "highly deferential," and a court's analysis must begin with a "strong presumption" that the defendant's attorney provided adequate representation to his client. *United States v. Meyer*, 234 F.3d 319, 324-25 (7th Cir. 2000). Petitioner must show that his counsel made "errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Further, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are

reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.

If a court finds an attorney's representation to be unconstitutionally deficient, it must then proceed to the second prong of the *Strickland* test. Under the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690) (internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; see also *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, "[c]ounsel's errors must have been 'so serious as to deprive the defendant of a fair trial.'" *Carter v. Butts*, 760 F.3d 631, 635 (7th Cir. 2014) (quoting *Strickland*, 466 U.S. at 693). "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (citations omitted).

### B. Ineffective Assistance of Appellate Counsel Standard

In order to establish a claim of ineffective assistance of appellate counsel, a movant "must show both deficient performance and prejudice." *Rogers v. United States*, 596 F. App'x 490, 493 (7th Cir. 2014) (citing *Strickland*, 466 U.S. at 687). Appellate counsel's performance is "measured against that of an objectively reasonable attorney." *Brown v. Finnegan*, 598 F.3d 705, 709 (7th Cir. 2010). Performance is deficient if counsel fails to argue an issue that is "obviously and clearly stronger" than the issues actually raised on appeal. *Walker v. Griffin*, 835 F.3d 705,

709 (7th Cir. 2016). "Prejudice exists if 'there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised.'" *Johnson v. Thurmer*, 624 F.3d 786, 793 (7th Cir. 2010) (quoting *Brown*, 598 F.3d at 425).

## III.    Analysis

### A.    SECTION 2255 AFFIDAVIT

The Government argues that this Court should deny Petitioner's § 2255 petition because he did not sign his motion under penalty of perjury or provide a separate affidavit in support of his petition. But Petitioner adequately verified the factual assertions in his petition. Petitioner's motion begins with the following statement:

> As I have drafted this petition myself, I hereby certify under the penalty of perjury pursuant to 28 U.S.C. § 1976 that all facts, proceedings and arguments presented herein are true and correct to the best of my knowledge.

[1, at 3.] The motion was also signed by Petitioner. *Id.* at 51. This is sufficient to satisfy Petitioner's verification requirement. *Ronald Johnson v. United States*, 2017 WL 3379753, at *1 (7th Cir. Jan. 20, 2017) ("Johnson signed his motion under penalty of perjury, so it is considered an affidavit." (citing *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010))); *Paters v. United States*, 159 F.3d 1043, 1052 (7th Cir. 1998) ("[W]hen a petition contains language to the effect of * * * 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct,' such petition, and the declaration(s) submitted along with it, are tantamount to affidavits." (footnote omitted)).

### B.    CRIME OF VIOLENCE DEFINITION

#### i.    *The "elements clause" is not unconstitutionally vague.*

Petitioner argues that his conviction under 18 U.S.C. § 924(c)(1)(A) of the Armed Career

Criminal Act ("ACCA") for possession of a firearm in relation to a crime of violence must be overturned based on the Supreme Court's decision in *Samuel Johnson v. United States*, which held that a residual clause in the definition of "violent felony" in § 924(e) of the ACCA—which is similar to the residual clause in the definition of "crime of violence" in § 924(c)(1)(A) of the ACCA—was unconstitutionally vague. 135 S. Ct. 2551, 2557 (2015). In *Samuel Johnson*, the petitioner pled guilty to being a felon in possession of a firearm in violation of § 922(g), and the government requested an enhanced sentence under the ACCA. *Id.* at 2555. Under the ACCA, a person convicted of being a felon in possession of a firearm faces more severe punishment if he has three or more previous convictions for a "violent felony." 18 U.S.C. § 924(e)(1). The petitioner in *Samuel Johnson* challenged the residual clause in the ACCA's definition of "violent felony," 135 S. Ct. 2555, which included any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The Supreme Court held that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges" thereby denying defendants sentenced pursuant to the residual clause their due process rights. *Samuel Johnson*, 135 S. Ct. at 2557. Because *Samuel Johnson* established a substantive constitutional rule, the Supreme Court later held that it applied retroactively on collateral attack of prior convictions. *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).

Petitioner argues that the residual clause in the definition of "crime of violence" under § 924(c) is similarly vague and that his sentence pursuant to § 924(c) therefore should be reversed. Under 18 U.S.C § 924(c)(1)(A), a person who uses or carries a firearm "during and in relation to any crime of violence" can be prosecuted. Section 924(c)(3) defines "crime of violence" as any felony that either "(A) has as an element the use, attempted use, or threatened use of physical force

against the person or property of another" (the "elements clause"), or (B) "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offence" (the "residual clause").   18 U.S.C. § 924(c)(3).

The Government argues that neither the "elements clause" nor the "residual clause" are unconstitutionally vague.   With respect to the "residual clause" of § 924(c)(3), the Seventh Circuit held that the Supreme Court's holding in *Samuel Johnson* compels the conclusion that the residual clause in § 924(c)(3)(B) is unconstitutionally vague.   *United States v. Cardena*, 2016 WL 6819696, at *25 (7th Cir. Nov. 18, 2016).   This Court is bound by that ruling.

Although Petitioner argues that the "elements clause" also is unconstitutionally vague, the Seventh Circuit has rejected that argument.   *Clark v. United States*, 680 F. App'x 470, 473 (7th Cir. 2017) (holding that the "elements clause" of § 924(c)(3) survived *Samuel Johnson* and affirming denial of § 2255 petition where petitioner's crime was a "crime of violence" under the elements clause).   Thus, under the elements clause, if § 876(b) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § 924(c)(3)(A), then Petitioner was properly convicted of being in possession of a firearm in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A).

### ii.   Section 876(b) Is Divisible

Because "threat to injure" and "threat to kidnap" are alternative elements for a conviction under § 876(b), as opposed to just factual means of committing a single element, the statute is divisible and the "modified categorical approach" should be used to determine whether Petitioner was convicted of an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," as required to be convicted pursuant to the "elements clause" of 18 U.S.C. § 924(c)(3)(A).   Courts generally use a "categorical

approach" to determine whether a crime "has as an element the use, attempted use, or threatened use of physical force," which mandates that courts look to "the statutory elements of the offense, not the actual facts underlying the conviction" to determine whether a crime is on its face a crime of violence. *United States v. Duncan*, 2016 WL 4254936, at *2 (7th Cir. Aug. 12, 2016) (citing *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013)). In *Mathis v. United States*, the Supreme Court reaffirmed the appropriateness of using this "categorical approach" in most cases, thereby eliminating the need to conduct mini-trials to determine whether the conduct committed in an underlying crime was violent. 136 S. Ct. 2243, 2248 (2016).

This categorical approach works for statutes that set out indivisible elements of a single crime. *Mathis*, 136 S.Ct. at 2248. But when the court is reviewing statutes that contain within it crimes with different elements, the court may conduct a limited review of the record materials in what is called the "modified categorical approach." *Curtis Johnson v. United States*, 559 U.S. 133, 144 (2010); *Mathis*, 136 S.Ct. at 2249. The modified categorical approach allows the courts to look to a limited class of documents (the indictment, jury instructions, or plea agreement and colloquy) to determine whether the defendant was convicted of a crime that has as an element the use, attempted use, or threatened use of physical force against the person or property of another. *United States v. Montez*, 858 F.3d 1085, 1092 (7th Cir. 2017).

Section 876(b) requires proof that the communication contained "any threat to kidnap any person or any threat to injure the person of the addressee or of another[.]" 18 U.S.C. § 876(b). Petitioner argues that the "threat to injure" and the "threat to kidnap" are alternative means for committing a crime under § 876(b). Petitioner therefore argues that § 876(b) is not divisible and that this Court should use the categorical approach to determine whether § 876(b) constitutes a crime of violence. The government responds that "threat to injure" and "threat to kidnap" are

alternative elements establishing two separate crimes: (1) knowingly mailing any communication containing any threat to kidnap any person; and (2) knowingly mailing any communication containing any threat to injure the person of the addressee or of another. The government's position is correct.

In *United States v. Lynn*, the Seventh Circuit considered whether Illinois' battery statute was divisible. 851 F.3d 786 (7th Cir. 2017). The Illinois battery statute provides that "[a] person commits battery if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 Ill. Comp. Stat. Ann. 5/12-3. The court noted that under the battery statute, "there is more than one way of committing battery: it can be committed by (1) causing bodily harm to an individual or (2) making physical contact of an insulting or provoking nature with an individual." *Lynn*, 858 F.3d at 797 (quotations and alterations omitted). These alternative methods were not simply "factual means of committing a single element." *Id*. (quoting *Mathis*, 136 S.Ct. at 2249). Thus, the Seventh Circuit concluded that the Illinois battery statute set forth alternative elements for committing the crime of battery, making the Illinois battery statute divisible. *Id*. Because § 876(b) similarly sets forth two separate crimes within one statute—knowingly mailing any communication containing any threat to kidnap any person and knowingly mailing any communication containing any threat to injure the person of the addressee or of another—§ 876(b) also is divisible.

Even if the Court were to conclude that it is unclear whether "intent to injure" and "intent to kidnap" are separate elements or just separate means, a "peek" at the indictment and the jury instructions establishes conclusively that that the "threat to injure" and the "threat to kidnap" are divisible. In *Mathis*, the Supreme Court recognized that it sometimes would be difficult to

14

determine whether parts of a statute are elements and therefore divisible, or means and therefore indivisible. 136 S.Ct. at 2256. In such cases, courts are to take "a peek at the record documents * * * for the sole and limited purpose of determining whether the listed items are elements of the offense." *Id*. The Court noted that the "indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." *Id*. at 2257. In Petitioner's case, the jury instructions listed the "threat to injure" requirement to the exclusion of the "threat to kidnap" requirement [*Tomkins*, No. 07-cr-00227, Dkt. 366, at 18], indicating that the "threat to injure" and the "threat to kidnap" are alternative elements establishing separate crimes. Similarly, the indictment referenced the "threat to injure" requirement to the exclusion of the "threat to kidnap" requirement. [*Tomkins*, No. 07-cr-00227, Dkt. 109, at 7-16.] Accordingly, the modified categorical approach applies and § 876(b) is divisible. Based on a review of the indictment and jury instructions, Petitioner was tried and convicted under the "threat to injure" prong of § 876(b).

### iii.    The "Threat To Injure" Under § 876(b) Is A Crime Of Violence

Section 924(c)(3)(A) defines "crime of violence" as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." In order to determine whether Petitioner was properly sentenced pursuant to 18 U.S.C. § 924(c)(3)(A), the Court must determine whether mailing a communication containing a "threat to injure the person of the addressee or of another" constitutes the "threatened use of physical force against the person or property of another."

Petitioner argues that *United States v. Sullivan*, 75 F.3d 297 (7th Cir. 1996), which the Court cited in its prior determination that the "threat to injure" under § 876(b) is a "crime of violence" [*Tomkins*, No. 07-cr-00227, Dkt. 109, at 7-16], is no longer good law in light of the

"ever evolving state of confusion over what constitutes a "crime of violence[.]" [1, at 8.] Petitioner raises two substantive arguments as to why the "threat to injure" prong of § 876 does not constitute a "crime of violence" for the purposes of § 924(c)(3)(A).[2]

First, Petitioner argues that a "threat to injure" does not constitute a crime of violence because a threat to injure could include threats to cause non-physical injuries. Petitioner contends that because "the only two elements of a § 876 violation are (1) a threatening communication (2) sent through the mails," § 876 does not have as an element the use, attempted use, or threatened use of physical force against the person or property of another. [1, at 11 (quoting *United States v. Geisler*, 143 F.3d 1070, 1071-72 (7th Cir. 1998)).] Although these are the two elements of a conviction under § 876 at a very high level, it is not true that any threatening communication is sufficient to convict a person under § 876. Section 876 requires that the communication contain a "threat to injure the person of the addressee or of another." Because the statute specifically refers to injuries to the person, the statute by its plain terms does not criminalize threats to cause monetary or emotional injuries. Section 876 therefore is unlike state statutes that criminalize threats of non-physical injuries, *cf. United States v. Ellis*, 622 F.3d 784 (7th Cir. 2010) (holding that because the element of threatening to "unlawfully injure" a person under Indiana's intimidation statute was not limited to threats of physical injury, a conviction under that statute did not constitute a "violent felony" under the ACCA),[3] and statutes that criminalize threats to destroy

---

[2] Because the Court is applying the modified categorical approach, it need not determine whether a "threat to kidnap" would constitute a "crime of violence" under the ACCA.

[3] The Court notes that the Indiana statute at issue in *Ellis* provided that a person was guilty of intimidation of he threatened to "unlawfully injure the person threated or another person." *Ellis*, 622 F.3d at 797 (quoting Ind. Code § 35-45-2-1(b)(1)(B)(i). Although this language is close to the language in § 876(b), there is a key difference. Injuring a person is not the same as injuring the person of another. The former could include non-physical injuries, while the latter includes only injuries to the body of the person. Indeed, in *Ellis*, the Seventh Circuit relied on case law from Indiana holding that the statute applied to threats of non-physical injuries. *Ellis*, 622 F.3d at 797, 799. The plain language of § 876(b), on the other hand, does not apply to threats of non-physical injuries. Petitioner cites many

property.  *Cf. United States v. Wilfong*, 2018 WL 1617654, at *6 (10th Cir. Apr. 4, 2018)

(indicating that the government properly conceded that a bomb threat conviction under 18 U.S.C.

§ 844(e), which encompasses threats to destroy any building, vehicle, or other property by means

of fire or an explosive, did not constitute a crime of violence under the elements clause).   Indeed,

even the case relied upon by Petitioner for the proposition that the only two elements of a § 876

violation are (1) a threatening communication (2) sent through the mails, recognizes that not any

threatening communication is sufficient.  *Geisler*, 143 F.3d at 1071 ("[Defendant] did not—nor

could he—challenge that the threats of injury and death (along with references to his 'friends'

affiliated with the Ku Klux Klan who might assist him in carrying out these threats) contained in

these letters constituted threats sufficient to trigger § 876.").

 Second, Petitioner argues that a "threat to injure" does not constitute a "crime of violence"

because a "threat to injure" does not necessarily involve a "threatened use of physical force."

According to Petitioner, a person could be convicted under § 876's "threat to injure" prong

without actually threatening to use the kind of "violent force" that is necessary to establish a

"crime of violence."    In making this argument, Petitioner relies on the Supreme Court's decision

in *Curtis Johnson v. United States*, which held that the term "physical force" in the ACCA's

definition of "violent felony" requires a showing of "violent force."   559 U.S. 133, 140 (2010).

Because the element of "force" in Florida's common-law crime of battery was satisfied by even

the slightest offensive touching, regardless of whether the touching caused any injury, the Court

held that a conviction under that statute did not constitute a "violent felony" for the purposes of the

---

other cases concluding that other statutes do not qualify as crimes of violence.   For example, Petitioner cites cases holding that certain state terrorist statutes do not constitute crimes of violence.   See, *e.g., United States v. Naranjo-Hernandez*, 133 Fed. App'x 96 (5th Cir. 2005).   As the Court has done elsewhere when Petitioner cites too many authorities for the Court to reasonably address each individually, the Court has reviewed these cases and concludes that they are distinguishable and/or non-binding.

ACCA. *Id*. at 139-143. Petitioner argues that the definition of "crime of violence" under the ACCA similarly would require a showing of violent force. Even if that is the case, the Supreme Court clarified in *Curtis Johnson* that "violent force" just means "force capable of causing physical pain or injury to another person." *Id*. at 140 (citing *Flores v. Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003)). As discussed above, § 876 requires that the communication contain a threat to injure the person of the addressee or of another, which would qualify as a threat to use force capable of causing pain or injury to another person.

Petitioner further argues that a person could threaten to injure someone physically without using physical force at all. In support of this argument, Petitioner cites to *Zivkovic v. Holder*, 724 F.3d 894 (7th Cir. 2013), for the proposition that "'physical injury' could occur without the use of 'physical force' and vice versa." [14, at 17.] In *Zivkovic*, the Seventh Circuit was deciding whether Illinois' residential trespass statute constitutes a crime of violence under the residual clause of the definition of "crime of violence" in 18 U.S.C. § 16(b), which defines a "crime of violence" as a felony offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C.A. § 16 (b). The Seventh Circuit held that the crime of residential trespass in Illinois does not involve a substantial risk that physical force against the person or property of another may be used in the course of committing the offense, and therefore does not constitute a crime of violence under the residual clause of the definition of "crime of violence" in 18 U.S.C. § 16(b).[4] *Zivkovic*, 724 F.3d at 905.

---

[4] The Court notes that the residual clause in 18 U.S.C.A. § 16 (b) has since been held unconstitutionally vague, *United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015), as has the residual clause in the definition of "crime of violence" in the ACCA. *United States v. Cardena*, 2016 WL 6819696, at *25 (7th Cir. Nov. 18, 2016). Still, as discussed above, the Seventh Circuit has concluded that the elements clause in the definition of "crime of violence" is not unconstitutionally vague. *Clark v. United States*, 680 F. App'x 470, 473 (7th Cir. 2017). Since the elements

In reaching this conclusion, the Seventh Circuit relied heavily on *Leocal v. Ashcroft*, which held that the crime of driving under the influence in Florida was not a crime of violence under § 16(b), because § 16(b) does not "encompass all negligent misconduct, such as the negligent operation of a vehicle." 543 U.S. 1, 10 (2004). The Supreme Court reasoned that the phrase "crime of violence" suggests "a category of violent, active crimes," and cautioned against blurring the distinction between the "violent crimes Congress sought to distinguish for heightened punishment and other crimes." *Id.* at 11. Although the Supreme Court recognized that someone might accidentally use force to cause an injury (as would be the case with the person who causes the death of another while driving under the influence), the Supreme Court held that the definition of "crime of violence" under § 16(b) includes only active force—*i.e.*, intentional force. The Supreme Court explained:

> While one may, in theory, actively employ something in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident. Thus, a person would "use * * * physical force against" another when pushing him; however, we would not ordinarily say a person "use[s] * * * physical force against" another by stumbling and falling into him. When interpreting a statute, we must give words their "ordinary or natural" meaning. The key phrase in § 16(a)—the "use * * * of physical force against the person or property of another"—most naturally suggests a higher degree of intent than negligent or merely accidental conduct. Petitioner's DUI offense therefore is not a crime of violence under § 16(a).

*Id.* at 9-10 (internal citations omitted). Thus, while Petitioner contends that a person could be injured without the use of physical force, a more precise and accurate description of the law is that a person could be injured without the use of intentional, active force. However, if a person threatens to injure the person of another, it could not be said the force to be used against the person would be accidental or unintentional.

---

clause also references "force," case law from the Seventh Circuit and Supreme Court analyzing the meaning of the term "force" remains relevant.

Furthermore, although Petitioner provides poisoning as an example of a person being injured without the use of physical force, the Supreme Court has made clear that "'physical force' is simply 'force exerted by and through concrete bodies,' as opposed to 'intellectual force or emotional force.'" *United States v. Castleman*, 134 S. Ct. 1405, 1414 (2014) (quoting *Curtis Johnson*, 559 U.S. at 144). The Supreme Court therefore has rejected the idea that the use of poison to cause bodily harm does not constitute the use of force:

> The "use of force" in [defendant's] example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under [defendant's] logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim.

*Id*. at 1415. Because the "threat to injure the person of the addressee or of another" necessarily involves the threat to use force—either directly or indirectly—to cause injury to the person, a conviction under the "threat to injure" prong of § 876(b) constitutes a "crime of violence." *United States v. Chapman*, 866 F.3d 129, 136 (3d Cir. 2017) (holding that "18 U.S.C. § 876(c), which requires knowingly mailing a communication containing a threat to injure the person of the addressee or of another, falls squarely within the career offender enhancement's definition of 'crime of violence'"). Petitioner's conviction pursuant to 18 U.S.C. § 924(c)(3)(A) for possession of a firearm in relation to a crime of violence therefore stands.

## C.     TRUE THREAT JURY INSTRUCTION

Petitioner argues that the jury instructions in his case erroneously defined the meaning of "true threat" under 18 U.S.C. § 876(b) by using an objective reasonable person standard. Petitioner relies on the Supreme Court's decision in *Elonis v. United States*, which held that the meaning of "true threat" in 18 U.S.C. § 875(c) requires proof that the defendant knew that he was

transmitting a communication and that the communication was threatening.  135 S. Ct. 2001, 2011 (2015).  Section 875(c) provides:

> Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C.A. § 875(c).  Because the statute was silent as to the required mental state, the Supreme Court read into the statute an additional *mens rea* requirement, which was "necessary to separate wrongful conduct from otherwise innocent conduct."  *Elonis*, 135 S. Ct. at 2010 (internal quotations omitted).  The Supreme Court noted that it was clear that a defendant convicted under § 875(c) must know that he is transmitting a communication, but that just sending a communication is not wrongful conduct.  *Id.*  "'[T]he crucial element separating legal innocence from wrongful conduct' is the threatening nature of the communication."  *Id.* (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73 (1994)).  The Supreme Court therefore concluded that the trial court erred in instructing the jury that the government need only prove that a reasonable person would regard the defendant's communications as threatening, as this instruction allowed the jury to find the defendant guilty without considering the defendant's subjective mental state.  *Id.* at 2012.

With respect to 18 U.S.C. § 876(b), however, there is already a *mens rea* requirement built into the statute that would protect the innocent actor.  Specifically, § 876(b) provides "[w]hoever, ***with intent to extort*** from any person any money or other thing of value, so deposits, or causes to be delivered, as aforesaid, any communication containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than twenty years, or both."  18 U.S.C.A. § 876(b) (emphasis added).  Because § 876(b) requires that the objective "threat to injure" occur in conjunction with the

subjective "intent to extort," there is no need to read an additional *mens rea* requirement into the statute.

Indeed, in *Elonis*, the Supreme Court even distinguished between §§ 875(b) and (d), both of which have an "intent to extort" *mens rea* requirement, and § 875(c), which has no explicit *mens rea* requirement. 135 S. Ct. at 2008 ("The fact that Congress excluded the requirement of an 'intent to extort' from § 875(c) is strong evidence that Congress did not mean to confine Section 875(c) to crimes of extortion."). Other courts that have addressed the issue have concluded that *Elonis* does not extend to statutes with an "intent to extort" element. See, *e.g., United States v. White*, 810 F.3d 212, 223 (4th Cir. 2016) ("Extortion only works if the recipient of the communication fears that not paying will invite an unsavory result. Thus, to intend to extort one must necessarily intend to instill fear of harm (for purposes of § 875(b), in the form of kidnapping or physical injury)."); *United States v. White*, 654 F. App'x 956, 968 (11th Cir. 2016) (holding *Elonis* does not apply to § 875(b), which requires that the government establish an "intent to extort"); *Shah v. United States*, 2017 WL 3168425, at *5 (S.D. W. Va. July 26, 2017) (same); *United States v. Godwin-Painter*, 2015 WL 5838501, at *3 (S.D. Ga. Oct. 6, 2015) (holding *Elonis* does not apply to § 875(d), which requires that the government establish an "intent to extort"). Because § 876(b) has an "intent to extort" requirement, it is not necessary to read an additional *mens rea* requirement into the statute as the Supreme Court did in *Elonis* to protect innocent actors.[5]

---

[5] Petitioner also argues that the Court's interpretation of § 876(b) makes the crime a strict liability offense, which cannot be considered a crime of violence. [1, at 15 (citing *United States v. McDonald*, 592 F.3d 808, 815 (7th Cir. 2009).] However, because Petitioner did not raise this argument on direct appeal, it is procedurally barred. *Qualls v. United States*, 774 F.2d 850, 851 (7th Cir. 1985). Furthermore, because § 876(b) has a *mens rea* requirement—*i.e.* the "intent to extort" element—this argument fails.

Even if *Elonis* did apply to § 876(b), however, the reference to "a reasonable person" in the jury instructions here would be considered harmless error. See *United States v. Matthews*, 505 F.3d 698, 706 (7th Cir. 2007) (harmless-error analysis applies when jury instructions omit or misstate an element of an offense); *Neder v. United States*, 527 U.S. 1, 9 (1999) ("Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.") (emphasis in original); see also *United States v. White*, 810 F.3d 212, 222 (4th Cir. 2016) (concluding post-*Elonis* that failure to instruct jury properly on *mens rea* for § 875(c) was harmless since defendant used "direct and declarative" language, gave "no other explanation for the message," and admitted wanting to scare recipient of communication). In *United States v. Carter*, the defendants argued that the jury was not properly instructed that the jury had to find that the defendants intended to cause death. 695 F.3d 690, 696 (7th Cir. 2012). Defendants argued "that, had the jury been properly instructed, it could have found that the defendants 'only' intended to cause serious bodily harm, rather than 'death or near death.'" *Id*. Given that one of the defendants in that case pointed a gun directly at the victim's head and repeatedly told the victim he would be killed, the Seventh Circuit concluded that there could be no serious argument that the purported error in the jury instructions contributed to the jury's verdict in any way. *Id*. The Seventh Circuit therefore concluded that any error "in the jury instructions was harmless beyond a reasonable doubt." *Id*. at 797.

The same result follows here. The jury found that Petitioner "intended to extort" his victims by mailing letters that stated "BANG!! YOU'RE DEAD" and warned "[t]he only reason you are still alive is because I did not attach one wire. If you do not believe me then go ahead and touch that red wire to the top of the battery pack. There is enough gunpowder and steel shot in

23

that tube to kill anyone in a ten foot radius when it goes off." Given these facts, there could be no serious argument that Petitioner did not intend to threaten to injure the victims in this case.

### D. INEFFECTIVE ASSISTANCE OF COUNSEL IN PLEA NEGOTIATIONS

Petitioner next argues that he received ineffective assistance of counsel because his trial attorneys failed to properly advise him regarding various legal issues, which resulted in Petitioner rejecting a 20-year plea agreement. "The Sixth Amendment right to effective assistance of counsel extends to the plea bargaining process." *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015) (citation omitted) (citing *Lafler v. Cooper*, 566 U.S. 156 (2012)). Petitioner alleges that his attorneys John Beal, Brian Collins, and Francis Lipuma all told Petitioner that the government was offering a 20-year plea agreement. Petitioner further alleges that he turned down the plea agreement each time based upon a misunderstanding of the legal theories he would be allowed to present at trial. To succeed on this claim, Petitioner must not only establish that counsel was deficient, but must also show "that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

Here, however, the Court need not rule on the merits of Petitioner's ineffective assistance of trial counsel claim. As a threshold matter, "[b]efore requiring the district court to reopen a petitioner's case" a petitioner bringing an ineffective assistance of counsel claim regarding the rejection of a plea agreement must make "some threshold showing of the evidentiary basis, beyond mere conclusory allegations, that supports a finding that the government in fact offered a plea

24

deal." *Martin v. United States*, 789 F.3d 703, 706-07 (7th Cir. 2015). Although this preliminary burden is not meant to be onerous, it is not enough for a petitioner to offer vague or conclusory allegations regarding the existence of a plea agreement. For example, in *Gallo–Vasquez v. United States*, the Seventh Circuit held that the district court did not err in dismissing the petitioner's § 2255 petition without conducting a hearing where, "aside from the allegation contained in [petitioner's] motion, there [was] no evidence that the government offered petitioner a deal." 402 F.3d 793, 798 (7th Cir. 2005). The petitioner did "not attach a copy of the proposed agreement, state when or by whom the offer was made, or give any details other than to assert that it contemplated a [more favorable] sentence" than the sentence he ultimately received after risking trial. *Id*.

Similarly, in *Martin*, the Seventh Circuit affirmed the district court's denial of an evidentiary hearing for a petitioner's claim of ineffective assistance of counsel with respect to the plea negotiation process because the petitioner did not offer any evidence of a plea agreement, nor did the petitioner allege any details about the alleged plea agreement. 789 F.3d at 706. Instead, the petitioner merely alleged the existence of a 30-year plea agreement. *Id*. This conclusory allegation was not enough to entitle the petitioner to an evidentiary hearing. *Id*. at 707 ("Because [petitioner] has failed to present any evidence, apart from his vague and conclusory allegations, showing that the government in fact offered a 30-year plea agreement, we hold that the district court did not abuse its discretion in summarily dismissing his petition.").

The same result follows here. Petitioner does not attach a copy of the alleged plea agreement, he does not provide an attorney affidavit establishing the existence of a plea agreement, nor does he provide any details about the specific terms of a plea agreement. In fact, the only evidence before the Court actually indicates that the Government was not willing to offer

Petitioner a 20-year plea agreement. The Government's response indicates the government is not aware of any unconditional offer made for Petitioner to plead guilty to a conviction carrying an agreed 20-year term of imprisonment. The Government's response further represents that it did not provide Petitioner with a draft plea agreement and did not convey any agreement to the Petitioner in writing. While these representations are not evidence, the Government's response attaches letters from Petitioner's attorneys that show it was the Petitioner who sought to enter into a 20-year plea agreement. Specifically, the Government attaches a July 3, 2009 letter from Brian M. Collins, Petitioner's attorney at the time, stating "Mr. Tomkins is willing to plead guilty in this matter, based upon the charges reflective of his conduct and for which an <u>agreed</u> sentence would not exceed 20 years." [13-2, at 11.] The Government also attaches an April 22, 2010 letter from Petitioner's then-counsel, Francis Lipuma, which again indicates that it was Petitioner, not the Government, who sought to enter into a 20-year plea deal.

Although Petitioner tries to explain away these letters by saying that his attorneys were just conveying his willingness to accept a 20-year plea agreement offered by the Government, during a July 21, 2010 hearing—after Petitioner's counsel sent the Government both of these letters—Petitioner stated on the record that the Government never made a plea offer. [*Tomkins*, No. 07-cr-00227, Dkt. 280, at 6-7 ("There has been zero offers from the United States government as far as a plea offer. We've made * * * at least three presentations that I know of trying to resolve this, and they've all been met with blanket rejection and just saying no. There's been no counteroffer.").] Because the Petitioner has not met the threshold requirement of establishing the existence of a plea offer, the Court rejects Petitioner's ineffective assistance of trial claim without an evidentiary hearing.

### E.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner argues that his counsel Francis Lipuma provided ineffective assistance of appellate counsel by failing to argue on direct appeal that Petitioner would have accepted a 20-year plea agreement if the Government disclosed the x-ray at the appropriate time as required by Rule 16.[6]  Petitioner argues that had appellate counsel raised this argument on direct appeal, the Seventh Circuit would have reversed his decision, as was done in *United States v. Mackin*, 793 F.3d 703 (7th Cir. 2015), which Petitioner contends is "on all fours" with his case.

In *United States v. Mackin*, the defendant was charged with one count of being a felon in possession of a firearm.  793 F.3d 703, at 704.  Because the defendant stipulated he was a felon, all the Government had to show was that the defendant was in possession of the firearm and the firearm's nexus to interstate commerce.  *Id*. at 709.  The Government produced an incomplete continuity slip, which was used to track the chain of custody for the firearm.  *Id*. at 706.  Based on this incomplete continuity slip, the defendant believed he could undermine the Government's evidence with respect to the firearm evidence.  *Id*. at 706-07.  After the Government produced a complete continuity slip at trial, the defendant objected to the introduction of the completed slip and moved for a mistrial.  *Id*. at 707.  The trial court denied both motions.  *Id*.  The Seventh Circuit concluded that the Government's failure to produce the completed continuity slip violated Rule 16 and that the defendant was prejudiced by this failure because the incomplete continuity slip was the defendant's "only possible line of defense."  *Id*. at 711-12.  The Seventh Circuit

---

[6] Petitioner raises this argument in the section of his petition discussing intervening changes in precedent, arguing that the Seventh Circuit's decision in *United States v. Mackin*, 793 F.3d 703 (7th Cir. 2015), constituted an intervening change in precedent.  *Mackin* did not, however, constitute a change in the law.  Rather, *Mackin* applied the law of the Seventh Circuit.  If *Mackin* was truly a change in the law, Petitioner could not argue that appellate counsel was ineffective for failing to anticipate this change in the law.  *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("The Sixth Amendment does not require counsel to forecast changes or advances in the law, or to press meritless arguments before a court.") (citing *Kurina v. Thieret*, 853 F.2d 1409, 1417 (7th Cir. 1988)).

therefore found that the trial court abused its discretion by failing to impose Rule 16 sanctions. *Id*. at 712.

Because the facts in Petitioner's case differ in significant respects to the facts in *Mackin*, Petitioner cannot show that he was prejudiced by appellate counsel's failure to argue that Petitioner would have accepted a 20-year plea agreement if the Government disclosed the x-ray at the appropriate time as required by Rule 16. First, unlike in *Mackin*, the Court actually did impose Rule 16 sanctions against the Government and prohibited the Government from introducing the x-ray in its case-in-chief. Although the Court later admitted the x-ray as rebuttal evidence, the Seventh Circuit has already upheld that decision. *United States v. Tomkins*, 782 F.3d 338, 348 (7th Cir. 2015) ("Even though Tomkins was *pro se*, the court's refusal to allow the x-ray during the government's case-in-chief and clear warning that the x-ray could come in as rebuttal evidence provided a reasonable remedy for any Rule 16 violation."). The law of the case doctrine prohibits Petitioner from relitigating this issue in a collateral proceeding. *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) ("Invoking the doctrine of the law of the case, the courts, including our court, forbid a prisoner to relitigate in a collateral proceeding an issue that was decided on his direct appeal."). Because the Court did not abuse its discretion in crafting its Rule 16 sanctions, the Petitioner cannot show that his appeal would have been any different if his appellate counsel argued that Petitioner would have accepted a 20-year plea agreement if the Government disclosed the x-ray at the appropriate time as required by Rule 16.[7]

---

[7] Even when evidence is excluded as a result of a constitutional violation, the evidence can be used to rebut false testimony of a criminal defendant. See, *e.g., Harris v. New York*, 401 U.S. 222, 226 (1971) (holding defendant could be impeached by prior contrary statements which had been ruled inadmissible under *Miranda v. Arizona*, 384 U.S. 436 (1966)). "[T]here is no right whatever-constitutional or otherwise-for a defendant to use false evidence." *Nix v. Whiteside*, 475 U.S. 157, 173 (1986) (citing *United States v. Havens*, 446 U.S. 620, 626-627 (1980)).

Furthermore, in *Mackin*, the defendant's entire defense rested on the assumption that the Government did not have a complete continuity slip. The existence or non-existence of the completed continuity slip significantly changed the defendant's bargaining position. In Petitioner's case, on the other hand, Petitioner had to respond to a wide range of evidence establishing his guilt. *Tomkins*, 782 F.3d at 348 ("[T]he government introduced photographic evidence showing that the relative sizes of the lead pellets and gunpowder would have made it highly unlikely that they did not mix together and contact the igniter. Further, explosive experts confirmed that Tomkins's devices had all the elements of explosive bombs, and expert Winslow maintained that the devices could have exploded if mishandled during shipping. In light of this testimony, we are not convinced that the x-ray made a critical difference in the jury's decision."). In light of all of this evidence, Petitioner cannot show that the existence of an x-ray in the government's case changed Petitioner's negotiating position in plea negotiations.

For the reasons discussed above, Petitioner cannot show that there is a reasonable probability that the outcome of his appeal would have been different if appellate counsel argued that Petitioner would have accepted a 20-year plea agreement if the Government disclosed the x-ray at the appropriate time as required by Rule 16. Petitioner's ineffective assistance of appellate counsel claim on this ground therefore fails.[8]

### G. ISSUES DECIDED ON DIRECT APPEAL

Petitioner also raises claims that were rejected by the Seventh Circuit on direct appeal. Collateral proceedings are not, however, an opportunity to relitigate issues that were already

---

[8] Because the Court concludes that Petitioner fails to establish the prejudice prong of his ineffective assistance of appellate counsel claim, the Court need not address whether appellate counsel provided deficient performance. *Amerson v. Farrey*, 492 F.3d 848, 851 (7th Cir. 2007).

decided on direct appeal. *White*, 371 F.3d at 902 (holding a defendant cannot "relitigate in a collateral proceeding an issue that was decided on his direct appeal").

First, Petitioner asks the Court to grant him an evidentiary hearing to show that the Government's search warrant failed to comply with the Fourth Amendment's particularity requirement. The Seventh Circuit already rejected this argument. *Tomkins*, 782 F.3d at 347-48. Petitioner has not offered any legitimate basis for revisiting this decision, and the Court declines to grant Petitioner any relief with respect to this issue. *Varela v. United States*, 481 F.3d 932, 935–36 (7th Cir. 2007) ("Issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances.") (citations omitted)).

Second, Petitioner argues that it was for the jury to determine whether an item is designed as a weapon and therefore constitutes a destructive device. Petitioner contends that the trial court improperly concluded this determination was purely a matter of law. But Petitioner mischaracterizes the Court's decision with respect to this issue. Both this Court and the Seventh Circuit held that a defendant's subjective intent is inadmissible when the device at issue had "no legitimate social or commercial purpose." *Tomkins*, 782 F.3d at 345. Again, this issue was already addressed by the Seventh Circuit, and Petitioner has not offered any legitimate basis for revisiting the Seventh Circuit's decision. The Court also declines to grant Petitioner relief with respect to this issue.

## E.     PROCEDURALLY DEFAULTED CLAIMS

Petitioner also brings a litany of other challenges to his conviction. Because Petitioner did not raise these claims on direct appeal, they are procedurally defaulted. *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017) ("Any claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is

procedurally defaulted." (citing *Hale v. United States*, 710 F.3d 711, 713-14 (7th Cir. 2013))).

Petitioner therefore cannot raise these claims under § 2255 absent a showing of cause and prejudice. *Ballinger v. United States*, 379 F.3d 427, 429-30 (7th Cir. 2004).

Petitioner has not established cause to excuse his procedurally defaulted claims. To begin, for the reasons discussed below, the claims raised by Petitioner are meritless, and appellate counsel cannot be ineffective for failing to raise a meritless claim. See *Jones v. DeTella*, 1996 WL 726429, at *2 (7th Cir. Dec. 9, 1996) (holding appellate counsel could not be ineffective for failing to raise a meritless claim); *Schneider v. United States*, 864 F.3d 518, 523 (7th Cir. 2017) (same). Nor can Petitioner show that appellate counsel's failure to raise these arguments prejudiced Petitioner as they are meritless. *Jones*, 1996 WL 726429, at *2. This is especially true in light of the strong evidence presented against Petitioner.

Even if these claims had some merit, appellate counsel would only be considered ineffective if he failed to raise claims that are "obviously and clearly stronger" than the issues actually raised on appeal. *Walker v. Griffin*, 835 F.3d 705, 709 (7th Cir. 2016). Petitioner does argue so here. To the contrary, Petitioner continues to raise the issues actually raised by appellate counsel, even though they were rejected by this Court and the Seventh Circuit. The Court turns to each of Petitioner's procedurally defaulted claims in turn.

*i.    Speedy Trial Act Violation*

Petitioner argues that the district court violated the Speedy Trial Act. In denying Petitioner's motion for pretrial release under § 3164, the district court concluded that no Speedy Trial Act Violation occurred. The District Court's decisions under § 3164 were twice upheld by the Seventh Circuit. [*United States v. Tomkins*, No. 11–3379, slip op. (7th Cir. Nov. 18, 2011); *United States v. Tomkins*, No. 12–1009, slip op. (7th Cir. Feb. 2, 2012).] Petitioner again sought

to argue that his detention violated the Speedy Trial Act in a motion to dismiss, which was denied in a lengthy opinion issued after the parties fully briefed the issue. [*Tomkins*, No. 07-cr-00227, Dkt. 362.] To the extent that Petitioner is asking the Court to reconsider issues already addressed by the Seventh Circuit, the law of the case doctrine prohibits Petitioner from relitigating such issues in a collateral proceeding. *White*, 371 F.3d at 902.

To the extent that Petitioner is asking the Court to reconsider its later ruling on Petitioner's Speedy Trial Act claim, Petitioner's claim is procedurally barred as it was not raised on appeal. *Delatorre*, 847 F.3d at 843. To the extent Petitioner argues that appellate counsel was ineffective for raising the argument, Petitioner's claim fails. As discussed by the Seventh Circuit, Petitioner forfeited arguments relating to the claimed Speedy Trial Act violation. [*Tomkins*, No. 07-cr-00227, Dkt. 240, at 1-2.] Furthermore, the Seventh Circuit found that Petitioner and his counsel played a part in the delays Petitioner challenged. [*Tomkins*, No. 07-cr-00227, Dkt. 287, at 2.] Finally, for the reasons explained in the Court's May 4, 2012 order, Petitioner's Speedy Trial Act argument was without merit. [*Tomkins*, No. 07-cr-00227, Dkt. 362.]

Because Petitioner's arguments regarding the claimed Speedy Trial Act violation were either forfeited or lacked merit, Petitioner cannot show that appellate counsel was defective for failing to raise these arguments. Petitioner's Speedy Trial Act claim therefore fails.

### ii. Discovery And Due Process Claims

Petitioner next argues that the Government violated *Brady v. Maryland*, 373 U.S. 87 (1963), by not disclosing the x-ray of the explosive device before trial because (1) *Brady* mandates the production of inculpatory evidence,[9] and (2) *Brady* mandates the production of impeachment

---

[9] After arguing that *Brady* applies to inculpatory evidence, Petitioner goes on to argue that the x-ray is actually exculpatory because it contradicts the government's portrayal of the internal configuration of the device. [1, at 32.] Again, because this issue was not raised on direct appeal, Petitioner procedurally defaulted on this argument.

evidence, even when the evidence is used to impeach the defendant himself. *Brady* requires that the prosecution disclose exculpatory evidence if it is both favorable and material to the defense. 373 U.S. at 87. *Giglio v. United States* expanded the *Brady* rule to include impeachment evidence. 405 U.S. 150, 155 (1972).

At trial, the Court concluded that the Government did not violate *Brady* by failing to disclose the x-ray, because the x-ray was not exculpatory. [*Tomkins*, No. 07-cr-00227, Dkt. 400, at 8-9.] Even though Petitioner did not raise the *Brady* issue on direct appeal, Petitioner argues that he has not procedurally defaulted these arguments because they are constitutional issues. But the "[f]ailure to raise a constitutional challenge to a conviction on direct appeal bars a petitioner from raising the issue in a section 2255 proceeding absent a showing of 'cause' for the procedural default and 'actual prejudice.'" *Cranshaw v. United States*, 23 F.3d 410 (7th Cir. 1994) (citing *United States v. Frady*, 456 U.S. 152, 167 (1982)); see also *Norris v. United States*, 687 F.2d 899, 901 (7th Cir. 1982).

To the extent that Petitioner seeks to excuse his procedural default by arguing that appellate counsel was ineffective for failing to raise these arguments on direct appeal, Petitioner's claim fails because appellate counsel cannot be ineffective for failing to raise a meritless claim. *Jones*, 1996 WL 726429, at *2. The government does not violate *Brady* by failing to produce inculpatory evidence. *United States v. Neal,* 611 F.3d 399, 401 (7th Cir. 2010) ("The principle of *Brady v. Maryland*, requires the disclosure of exculpatory evidence, not inculpatory evidence, and even then only evidence unknown to the defense.") (citations omitted)). Although *Giglio* also

---

Petitioner does not assert that appellate counsel should have raised this argument on direct appeal, so Petitioner fails to establish cause sufficient to excuse any procedural default. Furthermore, Petitioner does not offer any support for his contention that the x-ray was actually exculpatory. Rather, Petitioner asserts—without any support—that if he would have been given the opportunity to review the x-ray with his explosive's expert, the expert "surely would have pointed out that [Petitioner] was interpreting the x-ray incorrectly." *Id*. Given that Plaintiff does not offer any support for this conclusory assertion, the Court sees no need to revisit its prior determination that the x-ray was not exculpatory.

requires that the government produce exculpatory impeachment evidence, nothing in *Brady* or *Giglio* requires that the government produce purely inculpatory evidence used to impeach a defendant.

Petitioner argues that because the x-ray was used as impeachment evidence, the government was required to disclose the x-ray pursuant to *Giglio*.  In support of this argument, Petitioner cites *Socha v. Richardson*, [28, at 1],[10] which held that the government's failure to produce a recording and transcript of an interview with a witness's cellmate that could be used to impeach the witness violated *Brady* and *Giglio*, even though the transcript also included inculpatory information.  874 F.3d 983 (7th Cir. 2017).  The Seventh Circuit reasoned:

> Whether [defendant's] counsel for strategic reasons may have elected not to use the interview because of the inculpatory statements is a matter of speculation.  The point of *Brady* is to leave that decision with defense counsel, not to allow the prosecutor to withhold impeachment or direct evidence because she guesses that the defense would pass on the chance to use it.  The [ ] interview was impeachment evidence falling within *Brady's* ambit, and it was unreasonable for the Wisconsin Court of Appeals to conclude otherwise.

*Id*. at 988 (citing *United States v. Bagley*, 473 U.S. 667, 675-76 (1985)).  Here, unlike *Socha*, the "impeachment evidence" was not exculpatory in any manner because it was used to impeach the Petitioner himself.  Thus, nothing in *Socha* changes the rule that *Brady* and *Giglio* only require that the Government disclose exculpatory evidence.

Because appellate counsel cannot be ineffective for failing to raise a meritless claim, *Jones*, 1996 WL 726429, at *2, and because Petitioner cannot show that he was prejudiced by appellate counsel's failure to raise a meritless claim, *id*., Petitioner cannot show that appellate counsel was

---

[10] Petitioner also cites to cases discussing the Government's obligations under Rule 16.  As discussed above, however, the Seventh Circuit has already concluded that the Court's decision to admit the x-ray as rebuttal evidence did not constitute an abuse of discretion.  *Tomkins*, 782 F.3d at 348.

ineffective for failing to argue that the Government's failure to produce the x-ray violated *Brady*.

### iii.     *Intent To Extort Argument*

Petitioner next argues that he was denied his due process rights when the trial court prevented him from examining government witness Brian Shute "about the documented manipulation of 3Com stock."  [1, at 45.]   Petitioner contends that the Court's decision to bar this line of questioning eliminated any chance he had of showing that he was not trying "to extort a thing of value."   Because Petitioner did not raise this argument on direct appeal, this argument is procedurally barred.

To the extent that Petitioner seeks to raise an ineffective assistance of counsel claim based on appellate counsel's failure to raise this issue on direct appeal, Petitioner cannot establish either the performance or the prejudice prong of *Strickland*.   The claim was entirely without merit.   The Court begins by noting that Petitioner misrepresents the Court's ruling.   Petitioner sought to question Mr. Shute about a third-party who was convicted of insider trading of 3Com stock. Although Petitioner argued that the testimony was aimed at rebutting the government's contention that Petitioner acted out of greed, the Court correctly concluded that whether a third-party was or was not convicted of insider trading had no relevance to the charges against the Petitioner.   The Court did not rule that Petitioner was precluded from introducing evidence regarding his motive. Petitioner still fails to explain how testimony regarding a third-party's manipulation of 3Com stock is relevant to his motive in any way.   Because this testimony was not relevant, the Court properly sustained the Government's objection to the testimony.

Even if the Court erred in excluding this testimony, the court of appeals likely would have found the error harmless in light of the other overwhelming evidence of Petitioner's guilt. Petitioner admitted to the jury that he sent the letters and should be convicted under § 876(b).

Petitioner also admitted to the jury that he sent the letters "in an attempt to cause an increase in the value of the stocks that you invested in, and that is 3Com and Navarre." And Petitioner even testified that he understood he was "admitting [his] guilt to Counts One through Six and Eight through Ten," which were the § 876(b) charges. Accordingly, Petitioner fails to establish that appellate counsel was ineffective for failing to argue that Petitioner should have been able to question Mr. Shute regarding a third-party's manipulation of 3Com stock.

### ii. Hybrid Representation

Petitioner also argues that his constitutional rights were violated when the trial court denied his request for hybrid representation. This issue was already addressed by the Court. [*Tomkins*, No. 07-cr-00227, Dkt. 400, at 19-20.] To the extent that Petitioner is asking the Court to reconsider its prior rulings on this issue, the Court concludes that Petitioner's claim is procedurally barred as it was not raised on appeal. *Delatorre*, 847 F.3d at 843. To the extent Petitioner argues that appellate counsel was ineffective for raising this issue, such an argument would fail because the argument is meritless. Hybrid representation is "disfavored" in the Seventh Circuit and that "whether a defendant may act as co-counsel along with his own attorney, is a matter within the discretion of the district court." *U.S. v. Chavin*, 316 F.3d 666, 672 (7th Cir. 2002). Petitioner therefore cannot establish either the prejudice or the performance prong of his ineffective assistance of appellate counsel claim on this ground, *Jones*, 1996 WL 726429, at *2, and his hybrid representation claim fails.

### vi. Destructive Device Definition

Petitioner recognizes that courts "have consistently rejected any challenge to the constitutionality of the definition of destructive device" as unconstitutionally vague. Still, Petitioner argues that the definition of destructive device is unconstitutionally vague when—as

Petitioner claims was the case in his trial—the Court concludes that "the government did not have to prove that the device was designed as a weapon." [1, at 18.] Because Petitioner did not raise this issue on direct appeal, this argument is procedurally barred. *Delatorre*, 847 F.3d at 843 (7th Cir. 2017). Furthermore, any such argument would fail on the merits. As discussed above, Plaintiff's characterization of the Court's ruling with respect to the destructive device issue is inaccurate.[11] The fact that the Court can determine that a device is a "destructive device" when there is no legitimate social or commercial purpose for the device does not make the otherwise sufficient definition of "destructive device" unclear. Because this claim lacks merit, and because appellate counsel was not deficient for failing to raise this claim on direct appeal, Petitioner's challenge to the constitutionality of the definition of "destructive device" fails.

        *vi.*    *Daubert*

In his initial § 2255 petition, Petitioner argued that appellate counsel was ineffective for failing to challenge the adequacy of the government's expert disclosure for Mr. Winslow and for failing to challenge the introduction of certain lay and expert testimony from Officer McGuire. [1, at 24-28.] However, in his reply, Petitioner withdraws these arguments. [14, at 33.]. In his initial § 2255 petition, Petitioner also reincorporated his prior objections to the government's expert witness disclosures, [1, at 24], which the Court already addressed in Petitioner's criminal proceeding. [See, *Tomkins*, No. 07-cr-00227, Dkt. 347, at 25-30; *Tomkins*, No. 07-cr-00227, Dkt. 400, at 20-21.].

Petitioner has abandoned his newly raised *Daubert* challenges, and he fails to explain how the Court erred in its prior orders on the issue. Accordingly, Petitioner has failed to show that

---

[11] In his reply, Petitioner also indicates that he is challenging the Seventh Circuit's analysis relating to the definition of "destructive device" on his direct appeal. To the extent Plaintiff is seeking to relitigate that issue here, his claim is also barred. *White*, 371 F.3d at 902.

appellate counsel was defective for challenging the Court's prior determinations on these issues. Accordingly, Petitioner's *Daubert* challenges also fail.

*vi.*      *Miscellaneous Arguments*

Petitioner argues that various rulings of the Court denied him his right to present a complete defense. However, "a defendant does not enjoy an absolute right to present evidence relevant to his defense." *Montana v. Egelhoff*, 518 U.S. 37, 62 (1996) (citing *Crane v. Kentucky*, 476 U.S. 683, 690-691 (1986)). To the extent that Petitioner raises challenges to specific rulings the Court has addressed these arguments throughout this opinion.

With respect to the "crime of violence" and "destructive device" definitions, Petitioner argues that any ambiguity in the law should be resolved in favor of Petitioner under the rule of lenity. However, Petitioner has not shown that these definitions are constitutionally deficient or that there is some ambiguity regarding whether his crimes fall within these definitions.

### F.      Sentencing Reconsideration Under *Dean v. United States*

After Petitioner filed his § 2255 petition, the Supreme Court decided *Dean v. United States*, which holds that nothing prevents "a sentencing court from considering a mandatory minimum under § 924(c) when calculating an appropriate sentence for the predicate offense." 137 S. Ct. 1170, 1178 (2017). Petitioner seeks to have *Dean* applied to his case on collateral review, despite the fact that the criminal case against him was final on direct review when *Dean* was decided. Under the Supreme Court's decision in *Teague v. Lane*, "an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (citing *Griffith v. Kentucky*, 479 U.S. 314 (1987)). "A new rule applies retroactively in a collateral proceeding only if (1) the rule

is substantive or (2) the rule is a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id*.

Petitioner first argues that *Dean* did not announce a new rule, and thus, *Dean* applies both on direct and collateral review. [21, at 2-3.] "A rule is said to be new when it was not '*dictated by precedent existing at the time the defendant's conviction became final.*'" *Chaidez v. United States*, 655 F.3d 684, 688 (7th Cir. 2011) (quoting *Teague*, 489 U.S. at 301 (emphasis in original)). A rule was dictated by precedent when the outcome was not susceptible to debate among reasonable minds. *Id*. (citing *Butler v. McKellar*, 494 U.S. 407, 415 (1990)). The fact that the *Dean* decision was unanimous does provide some support for the argument that the case did not announce a new rule. *Id*. ("Lack of unanimity on the Court in deciding a particular case supports the conclusion that the case announced a new rule." (citations omitted)). However, "if the lower courts were split on the issue, the Court has concluded that the outcome of the case was susceptible to reasonable debate." *Id*. (citations omitted). Here, as Petitioner recognizes, the circuit courts were split on the issue addressed in *Dean*. [1, at 29.] Indeed, the Seventh Circuit reached the opposite conclusion as the Court in *Dean*. Accordingly, the outcome of *Dean* was susceptible to debate among reasonable minds, and *Dean* announced a new rule.

Petitioner next argues that even if *Dean* announced a new rule, the rule was a substantive rule that applies on collateral review. "[R]ules that regulate only the manner of determining the defendant's culpability are procedural." *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004). Rules that "alter[ ] the range of conduct or the class of persons that the law punishes" are substantive. *Id*. *Dean* does not alter the range of conduct or the class of persons that the law punishes. Rather, *Dean* merely addresses how much discretion a judge has in calculating a sentence, which is procedural. *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005) (holding that the

39

Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), which held that the federal Sentencing Guidelines were no longer mandatory, did not apply retroactively); *United States v. Dawson*, 2018 WL 1082839, at *5 (D. Or. Feb. 27, 2018) ("Because the rule in *Dean* affects only the sentencing judge's discretion in calculating a sentence, it is procedural * * * not substantive, and does not retroactively apply to [petitioner's] case.").

Petitioner analogizes this case to *Narvaez v. United States*, 674 F.3d 621, 629 (7th Cir. 2011). In *Narvaez*, the petitioner filed a motion to vacate his sentence under 28 U.S.C. § 2255(a) asserting that the imposition of a career offender status was illegal in light of the Supreme Court's decisions in *Begay v. United States*, 553 U.S. 137 (2008), and *Chambers v. United States*, 555 U.S. 122 (2009), which clarified the definition of a violent felony under the Armed Career Criminal Act. *Id*. at 623-24. The Seventh Circuit concluded that the petitioner's case fell within a "very narrow exception" to the general rule that "sentencing errors are generally not cognizable on collateral review," because a postconviction clarification in the law applicable to the petitioner's case made the "sentencing court's decision unlawful." *Id*. at 627. Specifically, the postconviction clarification made clear that the petitioner "never should have been classified as a career offender and never should have been subjected to the enhanced punishment reserved for such repetitive and violent offenders." *Id*. The Court reasoned that to classify the petitioner as belonging to the group of repeat violent offenders, who were branded as career criminals deserving of a far greater punishment, was almost "the equivalent of" convicting the petitioner of "a nonexistent offense." *Id*. at 629-30.

That is not the case here. The law has not changed in a manner that alters Petitioner's classification as a criminal or career offender. Rather, *Dean* merely addressed the district court's discretion to consider the imposition of a mandatory minimum in sentencing a defendant for other

crimes. This case therefore is more like *McReynolds*, which held that *Booker* did not apply retroactively under the *Teague* analysis.

The Court's research has located a couple dozen cases that have addressed this issue and each has reached the same conclusion—namely that *Dean* does not apply retroactively to § 2255 proceedings. See, *e. g., United States v. Carter*, 2018 WL 1369908, at *3 (D. Or. Mar. 9, 2018) (concluding that "*Dean* is not retroactive because it is a new procedural rule designed to enhance the accuracy of a conviction or sentence by regulating the manner of determining the defendant's culpability" (internal quotations omitted)); *United States v. Dawson*, 2018 WL 1082839, at *5 (D. Or. Feb. 27, 2018) (concluding that Dean does not apply retroactively because the case "was about a sentencing judge's discretion, which is a procedural concern"). This is true even when the issue was raised in connection with an initial § 2255 petition filed within one year of the petitioner's conviction becoming final. See, *e.g., Rhodes v. United States*, 2018 WL 950223, at *6 (E.D. Mo. Feb. 20, 2018) ("*Dean* does not apply retroactively to § 2255 proceedings under the criteria set forth in *Teague v. Lane*[.]" (citations omitted)).

To the extent that Petitioner contends that appellate counsel was ineffective for failing to raise this issue on direct appeal, the Court finds no basis for concluding that appellate counsel was ineffective for failing to anticipate the change in the law set forth in *Dean*. See *Lily v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993); see also *United States v. Rucker*, 1998 WL 234523, *4 (7th Cir. May 5, 1998) ("[W]e see no likely scenario in which failing to argue that established precedent ought to be changed amounts to ineffective assistance of counsel[.]"). At the time of Petitioner's appeal, binding Seventh Circuit precedent prohibited the Court from considering the mandatory add-on sentence to justify a lower sentence on the underlying offenses. *United States v.*

*Calabrese*, 572 F.3d 362, 369 (7th Cir. 2009). Because *Dean* does not apply retroactively, the Court denies Petitioner's request to be resentenced pursuant to *Dean*.

## IV. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing § 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El*, 537 U.S. at 336; *Evans v. Circuit Court of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that reasonable jurists would find the Court's assessment of his § 2255 claims debatable or wrong. *Miller-El*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In view of the analysis set forth above, the Court concludes that Petitioner has not made a substantial showing that reasonable jurists would differ on the merits of his claims. Although it does not appear that the Seventh Circuit has had occasion to issue an opinion on the retroactivity of *Dean* to cases on collateral review, the unanimity among the courts to have decided the issue convinces the Court not to issue a certificate on that issue. And none of the other issues raised by Petitioner meet the standard for certification, either.

## V. Motion to Strike

Given that the Supreme Court's ruling in *Dean v. United States*, 137 S. Ct. 1170, 1179 (2017), which was decided after Petitioner filed his petition, the Court requested supplemental briefing on the effect of the case on Petitioner's claim that he should be resentenced.   [See 19.] Both Petitioner and the Government responded to the request [20; 21], but the Court requested additional briefing regarding the relationship between *Dean* and *Teague v. Lane*, 489 U.S. 288 (1989).   [See 23.]   The parties were ordered to file the supplemental briefs no later than December 18, 2017.   *Id.*   On December 20, 2017, after the courtroom deputy spoke with an attorney from the government, the Court granted the Government's oral motion for an extension of time to file a response.   [See 25.]

Petitioner has moved to strike the response, arguing that the Government had improper *ex parte* communications with the Court.   [28.]   However, the courtroom deputy's conversation with an attorney for the Government, which did not address substantive issues in the case, was not an improper *ex parte* communication.   The oral motion was noted on the docket [25] and it was within the Court's discretion to extend the time for the Government to brief this new issue. Furthermore, in Petitioner's motion to strike, Petitioner addressed the arguments raised in the Government's response.   [See 28, at 2-3.]   Thus, the Court denies Petitioner's motion [28] to strike.

## VI. Conclusion

For the reasons stated above, Petitioner's § 2255 petition [1] is denied.   The Court considered the additional authorities identified in Petitioner's motions regarding supplemental authorities [16; 28], and the Court therefore grants the motions [16; 28].   The Court declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2) and directs the Clerk to enter

judgment in favor of the United States. Petitioner's motion for release on bond [5], motion for a status report [17], and motion for an expedited ruling [18] are stricken as moot. Petitioner's motion [27] to strike the government's memorandum concerning *Teague v. Lane* is denied.

Dated: April 23, 2018

_____
Robert M. Dow, Jr.
United States District Judge